1

2

3

4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7   SUSANA BURGOS,                          Case No.  23-cv-01907-AMO

8                      Plaintiff,

9           v.                              **ORDER DENYING PLAINTIFF'S
                                            MOTION TO REMAND**
10  CITIBANK, N.A.,
                                            Re: Dkt. No. 15
11                     Defendant.

12

13          Before the Court is Plaintiff Susana Burgos's motion to remand this putative class case to

14  state court.  The matter is fully briefed[1] and suitable for decision without oral argument.

15  Accordingly, the hearing set for September 14, 2023 is VACATED.  Having read the parties'

16  papers, carefully considered their arguments and the relevant legal authority, and good cause

17  appearing, the Court DENIES the motion for the reasons set forth below.

18                                  **BACKGROUND**

19  **A.      Factual Background**

20          Burgos brings claims for violations of state wage and hour laws, stemming from Citibank's

21  alleged failure to pay correct minimum wage, overtime, and sick pay when due, provide meal and

22  rest breaks, record missed meal and rest breaks, reimburse employees for required expenses, and

23

24  [1] Following the close of briefing, Citibank filed a supplemental request for judicial notice in
    support of its opposition to Burgos's motion to remand.  ECF 20.  Citibank did not obtain leave of
25  Court prior to filing the request.  *See* Civil L.R. 7-3(d) (Other than an objection to reply evidence
    or a statement of recent decision, "[o]nce a reply is filed, no additional memoranda, papers or
26  letters may be filed without prior Court approval[.]").  The Court therefore DENIES the
    supplemental request for judicial notice and has not considered the materials subject to that request
27  here.  *See Perryman v. Litton Loan Servicing, LP*, No. 14-CV-02261-JST, 2014 WL 4954674, at
    *5 (N.D. Cal. Oct. 1, 2014).  Going forward, the Court expects the parties to fully comply with the
28  Federal Rules, this district's Local Rules, and this Court's Standing Orders in preparing and
    submitting any filings. The Court will strike any non-compliant filings in the future.

1   provide accurate itemized statements as required by law.  Complaint ("Compl.," ECF 1 at 20-66)

2   ¶¶ 46-119.  Burgos seeks to represent a proposed class of:

3           [A]ll individuals who are or previously were employed by
        DEFENDANT in California, including any employees staffed with

4        DEFENDANT by a third party, and classified as nonexempt
        employees (the "CALIFORNIA CLASS") at any time during the

5        period beginning four (4) years prior to the filing of this Complaint
        and ending on the date as determined by the Court (the

6        "CALIFORNIA CLASS PERIOD").

7   *Id.* ¶ 27.  Burgos alleges that "[t]he amount in controversy for the aggregate claim of

8   CALIFORNIA CLASS Members is under five million dollars ($5,000,000.00)."  *Id.*

9           Burgos also seeks to represent a proposed sub-class of:

10          [A]ll members of the CALIFORNIA CLASS who are or previously
        were employed by DEFENDANT in California, including any

11       employees staffed with DEFENDANT by a third party, and
        classified as non-exempt employees(the "CALIFORNIA LABOR

12       SUB-CLASS") at any time during the period three (3) years prior to
        the filing of the complaint and ending on the date as determined by

13       the Court (the "CALIFORNIA LABOR SUB-CLASS PERIOD")
        pursuant to Cal. Code of Civ. Proc. § 382.

14

15  *Id.* ¶ 37.  As with the California Class, Burgos alleges that "[t]he amount in controversy for the

16  aggregate claim of CALIFORNIA LABOR SUB-CLASS Members is under five million dollars

17  ($5,000,000.00)."  *Id.*

18  **B.      Procedural Background**

19          Burgos commenced this putative class action in San Mateo Superior Court on February 3,

20  2023.  ECF 1 at 20.  On April 20, 2023, Citibank removed the case to this Court.  *Id.* at 1-17.  It

21  asserts that federal subject matter jurisdiction exists pursuant to the Class Action Fairness Act

22  ("CAFA," 28 U.S.C. § 1332(d)).  *Id.* at 4.  Burgos now moves to remand the case.[2]  ECF 15.  She

23  argues that jurisdiction under CAFA is not present, attacking Citibank's purported showing of the

24  required amount in controversy as unsubstantiated, based on "unsupported, unreliable and

25

26  _____

27  [2] The first page of Burgos's opening brief reads:  "On April 20, 2023, Defendant Monroe
    Operations, LLC ("Defendant") removed this class action from the Superior Court of California,
    County of San Mateo."  ECF 15-1 at 6.  The Court construes the reference to "Defendant Monroe
28  Operations, LLC" as one to the defendant named in the complaint in this case, *i.e.*, Citibank.

United States District Court
Northern District of California

United States District Court
Northern District of California

unreasonable assumption[s]" or otherwise "wholly unsupported[.]" *Id.* at 8-17.  Citibank opposes the motion.[3]  ECF 16.

# DISCUSSION

## A.    Legal Standard

A defendant may remove a class action from state to federal court by filing a notice of removal that lays out the grounds for removal.  28 U.S.C. § 1453(b); 28 U.S.C. § 1446(a).  "A plaintiff who contests the existence of removal jurisdiction may file a motion to remand, *see* 28 U.S.C. § 1447(c), the functional equivalent of a defendant's motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1)."  *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014).

Although "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," more is required "when the plaintiff contests, or the court questions, the defendant's allegation."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).  Where the plaintiff contests the removing defendant's allegations, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."  *Id.* at 88.

Like a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a plaintiff's motion to remand may raise either a facial attack or a factual attack on the defendant's jurisdictional allegations.[4]  *Leite*, 749 F.3d at 1121.  In effect, a facial attack challenges "the form, not the substance" of the defendant's removal allegations, and the defendant need not respond to the remand motion with "competent proof" under a summary judgment-type standard.  *Harris v. KM Indus., Inc.*, 980 F.3d 694, 700 (9th Cir. 2020).  By contrast, an attack is factual when the

---

[3] Citibank attached a request for judicial notice to its opposition brief, asking the Court take judicial notice of a Minute Order issued on January 18, 2022 in *Ayala v. UPS Supply Chain Sols., Inc.*, Case No. EDCV 20-117 PSG (AFMx).  ECF 16-3.  The Court grants the request for judicial notice pursuant to Fed. R. Evid. 201(b) and (c)(2).

[4] The parties dispute whether Burgos has properly mounted a factual attack.  *See* ECF 16 at 16 ("Here, Plaintiff's Motion does not mount a factual attack to the plausible allegations in Citibank's NOR . . . which is an independent basis to deny the Motion."); ECF 18 at 3 ("Plaintiff's Motion for Remand mounted a factual attack on Defendant's jurisdictional allegations in the Notice of Removal[.]").  Because Citibank's showing is sufficient to survive a factual attack, the Court declines to treat Burgos's challenge as purely facial.

3

plaintiff "contests the truth of the [defendant's] factual allegations, usually by introducing evidence outside the pleadings." *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020). In response to a factual attack, the defendant bears the burden of establishing by a preponderance of the evidence that the amount in controversy exceeds the threshold amount. *Harris*, 980 F.3d at 699. The plaintiff may rely solely on "a reasoned argument as to why any assumptions on which [defendant's numbers] are based are not supported by evidence." *Id.* at 700.

**B.      CAFA Jurisdiction**

"CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015) (citing 28 U.S.C. § 1332(d)). A defendant claiming federal jurisdiction under CAFA bears the burden of establishing that the amount in controversy exceeds $5,000,000 by a preponderance of the evidence. *Ibarra*, 775 F.3d at 1197 (citation omitted). Importantly, there is no presumption against removal under CAFA.[5] *Dart Cherokee*, 574 U.S. at 89; *see also Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022) ("The Court has explained that 'CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'") (quoting *Dart Cherokee*, 574 U.S. at 89).

"The Ninth Circuit [has] held that [allegations of] 'a pattern and practice of doing something does not necessarily mean always doing something, and that under such circumstances, the defendant 'bears the burden to show that its estimated amount in controversy relied on reasonable assumptions.'" *Garza v. Brinderson Constructors, Inc.*, 178 F. Supp. 3d 906, 911

---

[5] To the extent Burgos advocates for a legal standard that maintains the applicability of the presumption against removal in cases under CAFA, *see* ECF 15-1 at 7, the Court rejects the argument. *See Dart Cherokee*, 574 U.S. at 89 ("It suffices to point out that no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court.").

United States District Court
Northern District of California

1    (N.D. Cal. 2016) (quoting *Ibarra*, 775 F.3d at 1198-99).

2         Burgos asserts claims against Citibank for failure to provide required meal breaks and rest

3    periods.  Compl. ¶¶ 90-93, 94-97.  As to the meal breaks, she alleges that Citibank "from time to

4    time failed to provide all the legally required off-duty meal breaks to" her and members of the

5    California Labor Sub-Class.  *Id.* ¶ 91.  With respect to the denied rest periods, Burgos alleges that

6    she, and members of the putative California Labor Sub-Class, were:

7              from time to time required to work in excess of four (4) hours
               without being provided ten (10) minute rest periods.  Further, these
8              employees from time to time were denied their first rest periods of at
               least ten (10) minutes for some shifts worked of at least two (2) to
9              four (4) hours, a first and second rest period of at least ten (10)
               minutes for some shifts worked of between six (6) and eight (8)
10             hours, and a first, second and third rest period of at least ten (10)
               minutes for some shifts worked of ten (10) hours or more from time
11             to time.

12   *Id.* ¶ 95.  She also alleges that Citibank's "policy restricted PLAINTIFF and other CALIFORNIA

13   CLASS Members from unconstrained walks and is unlawful based on DEFENDANT's rule which

14   states PLAINTIFF and other CALIFORNIA CLASS Members cannot leave the work premises

15   during their rest period."  *Id.* ¶ 12.

16        Citibank calculates the potential amount in controversy for Burgos's meal break claim as

17   $3,816,054.78 and values the rest period claim at $4,291,620.86.[6]  ECF 16 at 18-22.  The basis for

18   these calculations is set forth in the declaration of Joey Delestre, Citibank's Assistant Vice

19   President, Time and Absence and the declaration of Ankit Kothari, a Data Analyst for the Labor

20   and Employment Practice Group at Morgan, Lewis & Bockius LLP.  *See* Declaration of Ankit

21   Kothari, ("Kothari Decl.," ECF 16-1); Declaration of Joey Delestre, ("Delestre Decl.," ECF 16-2).

22        Delestre is "familiar with Citibank's time reporting practices[]" and the computer systems

23   that contain current and former employees' time reporting information.  Delestre Decl. ¶ 3.

24   Delestre declares that timekeeping records "are prepared and/or maintained by [him] and/or

25   employees at Citibank who have a business duty to do so" and "are created and maintained in the

26

27   ──────────────
     [6] These figures represent a downward adjustment from the estimates in Citibank's notice of
28   removal.  *See* ECF 1 at 16.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    ordinary course of Citibank's business." *Id.* ¶ 4. Each time entry "was made at or near the time of

2    the occurrence of the event recorded in such records[,]" which "are kept in a safe and secure

3    location." *Id.*

4        Delestre explains that the timekeeping records provided to Citibank's outside counsel

5    "reflect each individual's work time recorded on each workday during the period of February 3,

6    2020, to April 20, 2023." *Id.* ¶ 6. These timekeeping records include "the time that each

7    employee started working, the times he or she began and ended each meal break, and the time he

8    or she stopped working each day." *Id.* They "also reflect each individual's job position/title

9    information associated with their time entries." *Id.* "[T]he time entries coded as 'User Entered'

10    with 'In Time' and 'Out Time' reflect the hours worked that each individual recorded, which do

11    not include unpaid meal breaks." *Id.* ¶ 7.

12        Kothari analyzed Citibank's timekeeping records for California non-exempt employees for

13    the period of February 3, 2020 to April 20, 2023. Kothari Decl. ¶ 4. That analysis shows:

14              (a) at least 3,368 individuals worked in a non-exempt job position
15              for Citibank in California during the relevant period;
                (b) those employees worked a total of more than 1,071,712
16              workdays, and 234,940 weeks;
                (c) a total of 1,047,759 workdays were at least 3.5 hours in length;
17              (d) a total of 931,654 workdays were at least 5 hours in length; and
                (e) the average length of time worked per employee each workday
18              was approximately 7.2 hours.

19    *Id.* ¶ 6.

20        Citibank reached its $3,816,054.78 valuation of the alleged meal break claim by taking the

21    931,654 number from Kothari's analysis, multiplying that by a weighted hourly rate of $20.48,[7]

22    and applying an assumed violation rate of 20%.[8] ECF 16 at 22. Citibank applied the same

23    methodology to reach its $4,291,620.86 valuation of the alleged rest period claim, taking the

---

[7] *See* Declaration of Nancy Nguyen in Support of Defendant's Notice of Removal ("Nguyen
Decl.," ECF No. 1-2) ¶ 4.d. In reply, Burgos asserts that "Defendant's amount in controversy
calculation fails to address the range of pay applicable to the Class Members," ECF 18 at 3, but
courts repeatedly accept declarations setting forth weighted average hourly rates to determine the
amount in controversy. *See, e.g., Alvarez v. Office Depot, Inc.*, No. CV 17-7220 PSG (AFMx),
2017 WL 5952181, at *2 (C.D. Cal. Nov. 30, 2017) (collecting cases).

[8] The assumed 20% violation rate translates to one meal break per violation per week. ECF 16 at
22.

1   1,047,759 number from Kothari's analysis, multiplying that by a weighed hourly rate of $20.48,

2   and applying "a conservative estimate of just a 20% violation rate." *Id.* at 21.  Burgos argues that

3   the 20% violation rate is an "unsupported assumption," and that Citibank should have analyzed its

4   data to review the actual the meal breaks taken or missed and presented "actual violation rates."

5   ECF 18 at 4-5, 8.  Burgos is wrong on both counts.

6          A removing defendant "is not required to comb through its records to identify and

7   calculate the exact frequency of violations. . . .  [A] defendant may calculate the amount in

8   controversy based on reasonable assumptions." *Oda v. Gucci Am., Inc.*, No. 2:14-CV-07469-

9   SVW, 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015).  Though Burgos challenges Citibank's

10  assumed violation rates, Burgos's proposed alternative—that Citibank present data of actual

11  violation rates—imposes too high a burden.  *See Harris*, 980 F.3d at 701 ("A defendant need not

12  make the plaintiff's case for it or prove the amount in controversy beyond a legal certainty.")

13  (citing *Dart Cherokee*, 547 U.S. at 88-89; *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 924

14  (9th Cir. 2019)).  The Court will not require that here.

15         Measured against the requirement of a reasonable assumption, Citibank's 20% violation

16  rate meets the mark.  As Burgos points out in her reply brief, she alleges violations occurring

17  "from time to time" for "some employees."  ECF 18 at 5-8.  Citibank points to different

18  allegations, also contained in Burgos's complaint, of "company policy and procedure," "uniform

19  practice," and "pattern and practice."  ECF 16 at 9-10.  In other cases where a plaintiff's

20  allegations have varied as they do here, courts have found that an assumed 20% violation rate is

21  reasonable.  *See Ramirez v. Cornerstone Bldg. Brands*, No. 2:21-CV-01017-MCE-JDP, 2022 WL

22  1556664, at *1 (E.D. Cal. May 17, 2022) (20% violation rate was reasonable where complaint

23  contained allegations of violations occurring "often" or "from time to time" as well as violations

24  resulting from "company-wide policies and procedures"); *Cavada v. Inter-Continental Hotels

25  Group, Inc.*, No. 19-cv-1675-GPC(BLM), 2019 WL 5677846, at *7 (S.D. Cal. Nov. 1, 2019) (20%

26  violation rate for meal period violations and 10% rate for rest period violations were reasonable

27  where plaintiff selectively relied solely on "time to time" allegations though complaint also

28  contained allegations based on "company policy," "practice and procedure," and "unform policy

United States District Court
Northern District of California

7

1   and practice"). In line with these cases, Citibank's assumed violation rate of 20% is reasonable

2   here.

3          Burgos's reliance on *Harris v. KM Industrial* does not persuade the Court otherwise.

4   There, the Ninth circuit affirmed the district court's remand order, agreeing with its finding that

5   the removing defendant had "failed to provide *any* evidence to support its assumption that all 442

6   Hourly Employee Class members were the same as the members of the Meal Period Sub-Class or

7   the Rest Period Sub-Class or that they all worked shifts long enough to qualify for meal or rest

8   periods." 980 F.3d at 701 (emphasis in original). Unlike the defendant in *Harris*, here Citibank

9   has presented evidence that "(c) a total of 1,047,759 workdays were at least 3.5 hours in length;

10  (d) a total of 931,654 workdays were at least 5 hours in length; and (e) the average length of time

11  worked per employee each workday was approximately 7.2 hours." *See* Kothari Decl. ¶ 6. Using

12  these numbers, Citibank's proposed valuations, totaling more than $8 million for Burgos's meal

13  break and rest period claims alone, well exceed CAFA's $5 million floor. As a result, the Court

14  need not address Burgos's remaining arguments as to Citibank's calculation of waiting time

15  penalties or attorney's fees. *See Alvarez*, 2017 WL 5952181, at *4 ("Because the Court concludes

16  that Plaintiff's causes of action for meal and rest period violations alone satisfy the CAFA amount

17  in controversy requirement, it need not consider Plaintiff's additional arguments.").

18                                      **CONCLUSION**

19         For the reasons set forth above, Burgos's motion to remand is DENIED.

20         **IT IS SO ORDERED.**

21  Dated: August 28, 2023

22

23                                      **ARACELI MARTÍNEZ-OLGUÍN**
                                        **United States District Judge**

24

25

26

27

28

United States District Court
Northern District of California