MORGAN, LEWIS & BOCKIUS LLP
Daryl S. Landy, Bar No. 136288
daryl.landy@morganlewis.com
Nancy Nguyen, Bar No. 301677
nancy.nguyen@morganlewis.com
600 Anton Boulevard, Suite 1800
Costa Mesa, CA  92626-7653
Tel:     +1.714.830.0600
Fax:     +1.714.830.0700

MORGAN, LEWIS & BOCKIUS LLP
Sam S. Shaulson (admitted *pro hac vice*)
sam.shaulson@morganlewis.com
101 Park Avenue
New York, NY 10178-0060
Tel:     +1.212.309.6000
Fax:     +1.212.309.6001

Attorneys for Defendant
CITIBANK, N.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSANA BURGOS, an individual, on behalf of herself and on behalf of all persons similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CITIBANK, N.A.; a Corporation; and DOES 1 through 50 inclusive,<br><br>Defendants. | Case No. 3:23-cv-01907-AMO<br><br>**DEFENDANT CITIBANK, N.A.'S MOTION TO COMPEL ARBITRATION AND DISMISS ACTION**<br><br>Date:          January 11, 2024<br>Time:          2:00 p.m.<br>Crtrm:          10<br><br>Complaint Filed:     February 3, 2023<br>Trial Date:          None Set |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................... 2

II.    RELEVANT BACKGROUND ............................................................................. 3

       A.    Plaintiff's Employment ............................................................................. 3

       B.    The 2017 Policy's Arbitration Terms ....................................................... 4

       C.    Prior Arbitration Proceeding Between Plaintiff And Citibank ............... 4

       D.    Plaintiff's Lawsuit In This Action............................................................ 6

III.   LEGAL ARGUMENT ......................................................................................... 7

       A.    The FAA Precludes the Court From Invalidating The Policy Under CCP
             Section 1281.98.......................................................................................... 7

             1.    The FAA Governs The Policy............................................................ 8

             2.    The FAA Preempts CCP Section 1281.98 Because Section 1281.98
                   Creates Special Rules Disfavoring Arbitration Agreements.......... 8

             3.    Section 1281.98 Is Inapplicable Because The Parties Already
                   Agreed To A Procedure That Secures Payment Of Arbitration Fees
                   Without Delaying Arbitration. ....................................................... 12

                   a.   The Parties Agreed To Extend The Due Date For Payment. ........ 13

                   b.   The Fees At Issue Were Not Required To Continue The
                        Arbitration Proceeding At The Time Citibank Paid Them. .......... 13

                   c.   AAA Must Have An Opportunity To Administer Rule 47
                        Before A "Material Breach" Due To Nonpayment Of Fees
                        Can Occur.................................................................................... 14

             4.    AAA Had Not Yet Triggered The 30-Day Period For Payment
                   Under Section 1281.98 When It Received Fee Payments From
                   Citibank. ........................................................................................ 15

             5.    Plaintiff Must Arbitrate Her New Theories And Claims Even
                   Absent Preemption. ....................................................................... 17

       B.    The Policy Is Binding And Enforceable. ................................................ 18

             1.    Plaintiff Entered Into A Valid Arbitration Agreement. ............... 18

             2.    The Policy Covers Plaintiff's Claims............................................. 19

             3.    The Policy Is Not Unconscionable................................................. 19

                   a.   The Policy Is Not Procedurally Unconscionable. ....................... 20

                   b.   The Policy Is Not Substantively Unconscionable....................... 21

       C.    The Court Should Dismiss This Action. ................................................. 23

IV.    CONCLUSION .................................................................................................. 23

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

i

DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND DISMISS ACTION
CASE NO. 3:23-CV-01907-AMO

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*24 Hour Fitness, Inc. v. Super. Ct.*,
   66 Cal. App. 4th 1199 (1998)......................................................................................... 23

*Allied-Bruce Terminix Companies v. Dobson*,
   513 U.S. 265 (1995) ....................................................................................................... 8

*Am. Exp. Co. v. Italian Colors Rest.*,
   570 U.S. 228 (2013) ................................................................................................ 7, 14

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
   24 Cal. 4th 83 (2000) ...................................................................................... 19, 21, 22

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ....................................................................................................... 7

*Bakeries v. Bakery Workers*,
   370 U.S. 254 (1962) ..................................................................................................... 17

*Baltazar v. Forever 21, Inc.*,
   62 Cal. 4th 1237 (2016) .................................................................................... 19, 20, 21

*Belyea v. Greensky, Inc.*,
   2022 WL 14965532 (N.D. Cal. Oct. 26, 2022)........................................................ 9, 10, 11

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015)..................................................................................... 12

*Chamber of Commerce of the United States of America v. Bonta*,
   62 F.4th 473 (9th Cir. 2023)......................................................................................... 9

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000)..................................................................................... 18

*Comedy Club, Inc. v. Improv W. Assocs.*,
   553 F.3d 1277 (9th Cir. 2009)..................................................................................... 18

*Dumais v. Am. Gold Corp.*,
   299 F.3d 1216 (10th Cir. 2002).................................................................................... 23

*Engalla v. Permanente Med. Grp., Inc.*,
   15 Cal. 4th 951 (1977) ................................................................................................ 19

*Espinoza v. Superior Court*,
   83 Cal. App. 5th 761 (2022)......................................................................................... 9

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

ii

DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND DISMISS ACTION
CASE NO. 3:23-CV-01907-AMO

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) ........................................................................... 20

*Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*,
    232 Cal. App. 4th 1332 (2015) ....................................................... 20

*Johnmohammadi v. Bloomingdale's, Inc.*,
    755 F.3d 1072 (9th Cir. 2014) ......................................................... 23

*Kindred Nursing Centers L.P. v. Clark*,
    581 U.S. 246 (2017) .................................................................... 8, 10

*Lane v. Francis Capital Mgmt. LLC*,
    224 Cal. App. 4th 676 (2014) .......................................................... 20

*Levy v. Super. Ct.*,
    10 Cal. 4th 578 (1995) ..................................................................... 16

*McManus v. CIBC World Mkts. Corp.*,
    109 Cal. App. 4th 76 (2003) ............................................................ 20

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ........................................................................... 7

*Morris v. Redwood Empire Bancorp*,
    128 Cal. App. 4th 1305 (2005) ........................................................ 21

*Mortenson v. Bresnan Commc'ns*,
    722 F.3d 1151 (9th Cir. 2013) ........................................................... 7

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ........................................................................ 8, 18

*Ortiz v. Hobby Lobby Stores, Inc.*,
    52 F. Supp. 3d 1070 (E.D. Cal. 2014) ............................................. 19

*Reliance Fin. Corp. v. Miller*,
    557 F.2d 674 (9th Cir. 1977) ........................................................... 10

*Sanchez v. Valencia Holding Co., LLC*,
    61 Cal. 4th 899 (2015) ......................................................... 19, 20, 21

*Serafin v. Balco Props. Ltd., LLC*,
    235 Cal. App. 4th 165 (2015) .......................................................... 20

*Soltani v. W. & S. Life Ins. Co.*,
    258 F.3d 1038 (9th Cir. 2001) ......................................................... 21

*Sonic Calabasas A, Inc. v. Moreno*,
    57 Cal. 4th 1109 (2013) (*Sonic II*) ........................................... 19, 21

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND DISMISS ACTION
CASE NO. 3:23-CV-01907-AMO

*United States v. Culbert*,
    548 F.2d 1355 (9th Cir. 1977), rev'd on other grounds, 435 U.S. 371 (1978) ........................ 8

*Urica, Inc. v. Pharmaplast S.A.E.*,
    2013 WL 12123230 (C.D. Cal. May 6, 2013) ........................................................................ 10

*Viacom Int'l Inc. v. MGA Ent., Inc.*,
    2016 WL 7448142 (C.D. Cal. Aug. 11, 2016) ...................................................................... 10

*Viking River Cruises, Inc. v. Moriana*,
    142 S.Ct. 1906 (2022) ......................................................................................................... 10

**Statutes**

9 U.S.C. § 2 ................................................................................................................ 8, 11

9 U.S.C. § 3 ......................................................................................................................... 23

California Code of Civil Procedure
    § 425.11(d)(2) ..................................................................................................................... 16
    § 664.6(b) ............................................................................................................................ 16
    § 998(b) ............................................................................................................................... 16
    § 1281.97 ....................................................................................................................... *passim*
    § 1281.98 ....................................................................................................................... *passim*
    § 1985.6(b)(1) ..................................................................................................................... 16

**Other Authorities**

AAA Employment Arbitration Rules and Mediation Procedures
    Rule 9 .................................................................................................................................. 22
    Rule 47 ........................................................................................................................... *passim*

Assem. Floor Analysis, 3d reading analysis of Sen. Bill No. 808 (2019-2020 Reg.
    Sess.) as amended May 20, 2019 ........................................................................................ 14

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

iv

DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND DISMISS ACTION
CASE NO. 3:23-CV-01907-AMO

1

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2

**PLEASE TAKE NOTICE** that on January 11, 2024, at 2:00 p.m. or as soon thereafter as

3

may be heard in Courtroom 10 of this Court, located at 450 Golden Gate Avenue, San Francisco,

4

California 94102, Defendant Citibank, N.A. ("Defendant" or "Citibank") will and hereby does

5

move this Court for an Order compelling Plaintiff Susana Burgos ("Plaintiff") to arbitrate the

6

claims alleged in this action on an individual basis and to strike and to dismiss Plaintiff's claims

7

alleged on a class-wide basis.

8

Citibank seeks to compel arbitration on an individual basis and to dismiss this action

9

because Plaintiff agreed to arbitrate any employment-related disputes with Citibank on an

10

individual basis only.  After initially submitting her claims to arbitration pursuant to her

11

agreement, Plaintiff improperly withdrew from arbitration, incorrectly asserting that California

12

Code of Civil Procedure section 1281.98 authorized her to do so.  Plaintiff was incorrect because

13

the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, preempts section 1281.98.  Moreover,

14

section 1281.98 gave Plaintiff no basis for withdrawing even if not preempted, which it is.

15

Because Plaintiff has refused to abide by her arbitration agreement, Citibank must seek relief

16

from the Court.  *Id.*  As a result, the Court should compel Plaintiff to arbitrate her claims on an

17

individual basis, and the Court should strike and/or dismiss her claims alleged on behalf of a

18

putative class.

19

This Motion is based on this Notice of Motion and Motion, the accompanying

20

Memorandum of Points and Authorities, the Declarations of Tara Pendleton, Simon M. Levy, and

21

Nancy Nguyen, and all exhibits attached thereto, the evidence to which the Court may take

22

judicial notice, the record in this action, and any other evidence as may be presented by Citibank

23

at or before the hearing on this Motion.

24

Dated:  September 29, 2023          MORGAN, LEWIS & BOCKIUS LLP

25

By  */s/ Daryl S. Landy*

26

Daryl S. Landy
Attorneys for Defendant
CITIBANK, N.A.

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

1

DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND DISMISS ACTION
CASE NO. 3:23-CV-01907-AMO

I.  **INTRODUCTION**

All of Plaintiff Susana Burgos' ("Plaintiff") claims in this action should be compelled to binding individual arbitration in accordance with the arbitration agreement Plaintiff entered into with her former employer, Defendant Citibank, N.A. ("Citi" or "Citibank").  Plaintiff does not dispute that she entered into a valid arbitration agreement (the "Policy") with Citibank that requires submission of any employment-related claims between them to individual arbitration.  Indeed, Plaintiff initially filed some of her claims in arbitration as the Policy required.  Plaintiff then abandoned the ongoing arbitration proceedings purporting to rely on California Code of Civil Procedure section 1281.98 because Citibank allegedly had not timely paid certain arbitration fees "required to continue the arbitration proceeding" while the arbitration was pending.  However, Plaintiff had no basis under section 1281.98 to withdraw from her ongoing arbitration proceedings.  For many reasons, she remains bound to comply with the Policy to resolve this dispute in individual arbitration only.

First, the Federal Arbitration Act ("FAA") expressly governs the parties' arbitration agreement and, as another court in this district has confirmed, the FAA preempts section 1281.98 because that section conflicts with the FAA's mandate to place arbitration contracts on equal footing with any other contract.

Second, even if section 1281.98 somehow could coexist with the FAA—which it cannot—it would not apply here because the timing of Citibank's fee payment did not halt (or even temporarily pause) the arbitration proceeding, which continued as scheduled.  Section 1281.98 only applies to "fees or costs *required to continue the arbitration proceeding*," and the parties expressly agreed through incorporation of the American Arbitration Association's ("AAA") rules that arbitration must proceed while fees are unpaid unless the AAA has issued notice of unpaid fees and provided the opportunity for any party to advance the unpaid fees.  Here, Citibank had paid all fees before AAA issued any such notice and the payment caused no delay in the arbitration.  Thus, section 1281.98 does not apply here.

Third, the arbitration provider failed to send the invoice at issue to Citibank, the actual party to the arbitration, which is a prerequisite for establishing the payment due date set forth in

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

2

DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND DISMISS ACTION
CASE NO. 3:23-CV-01907-AMO

1   section 1281.98.  Section 1281.98 specifically requires the provider to send the invoice to a *party*,

2   not to the party's outside counsel as happened here.  The arbitration provider's failure to follow

3   the statute's strict requirements prevents Plaintiff from taking advantage of any remedy that

4   section 1281.98 could offer against Citibank.

5          Further, even if section 1281.98 allowed Plaintiff to adjudicate her previously filed claims

6   in court rather than in arbitration, the statute permits her to withdraw from arbitration only the

7   individual claims already pending at the time of Citibank's supposed breach.  Plaintiff's

8   complaint here, however, includes new causes of action and new theories of liability never before

9   raised in arbitration, including class-wide claims in violation of a class waiver that remains in

10  effect.  Application of section 1281.98 does not rescind the entire agreement to arbitrate.

11  Accordingly, the Policy still covers any new claim not raised in the prior arbitration.

12         Citibank thus respectfully requests that this Court enforce the parties' arbitration

13  agreement, compel all of Plaintiff's individual claims to arbitration, and dismiss the action.

14  Alternatively, if the Court finds that under section 1281.98 the Policy no longer covers the claims

15  previously asserted in arbitration, then Plaintiff still must arbitrate on an individual basis her new

16  claims first alleged in this action and must litigate the previously asserted claims on an individual

17  basis in this Court.

18  **II.**     **RELEVANT BACKGROUND**

19          **A.**     **Plaintiff's Employment**

20         On August 31, 2010, Citibank extended a conditional offer of employment to Plaintiff for

21  a Personal Banker position at the Pleasant Hill branch.  Declaration of Tara Pendleton

22  ("Pendleton Decl.") ¶¶ 4, 5, Ex. A.  Plaintiff's offer letter referenced Citibank's Employment

23  Arbitration Policy (the "Policy").  *Id.*  Plaintiff began her onboarding process on September 8,

24  2010, and signed several acknowledgments agreeing to abide by the Policy, and specifically to its

25  arbitration terms.  *Id.* ¶ 6, Ex. B.

26         Over the course of her employment, Plaintiff signed updated acknowledgements each time

27  Citibank updated the Policy and provided the new version to her.  *Id.* ¶¶ 7-8, Ex. C.  On February

28  24, 2017, Plaintiff signed the last such acknowledgement before her employment with Citibank

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND DISMISS ACTION
CASE NO. 3:23-CV-01907-AMO

ended on June 1, 2021.  *Id.* ¶ 8, Ex. C at 1.

**B.**    **The 2017 Policy's Arbitration Terms**

The 2017 version of the Policy–the most recent version that Plaintiff confirmed receiving and reviewing, and to which Plaintiff agreed to be bound–states that Plaintiff's "continued employment with Citi . . . shall constitute consideration for and assent to your obligations under this Policy." *Id.* ¶ 11, Ex. F at 1.  The Policy "makes arbitration the required and exclusive forum for the resolution of all employment-related disputes (other than disputes which be federal law are precluded from arbitration) between [Plaintiff] and Citi . . . ." *Id.*  The Policy expressly states that it is "governed by the Federal Arbitration Act (Title 9 U.S.C.) ("FAA")." *Id.* at 5.

Under the Policy, all covered claims "must be brought and adjudicated on an individual basis." *Id.* at 2.  The Policy explains that "[n]either [Plaintiff] nor Citi may submit or maintain a class, collective or representative action for resolution under this Policy *or in any forum.*" *Id.* (emphasis added).  This class waiver does not limit itself to arbitrable claims, stating:

> To the extent any dispute between you and Citi is not subject to arbitration for any reason, the class, collective and representative action waiver set forth in this Policy still applies.

*Id.*

Through the Policy the parties selected the American Arbitration Association ("AAA") as the chosen forum and adopted AAA's Employment Arbitration Rules and Mediation Procedures. *Id.* at 1, 3.  The Policy provides the URL where Plaintiff can review those rules at any time.[1]  *Id.*

**C.**    **Prior Arbitration Proceeding Between Plaintiff And Citibank**

On May 26, 2022, Plaintiff submitted under the Policy a demand for arbitration to AAA asserting individual Labor Code claims against Citibank.  Declaration of Simon M. Levy ("Levy Decl.") ¶ 2, Ex. A.  These individual claims asserted that Citibank did not:  1) pay Plaintiff accurate overtime wages based on purported off-the-clock work in violation of Labor Code section 510; 2) pay Plaintiff minimum wage, also due to purported off-the-clock work, in

---

[1] The Policy sets forth conditions in which the Financial Industry Regulatory Authority ("FINRA") provides the forum and rules for arbitration instead of AAA, but those conditions did not apply to Plaintiff because Plaintiff was not a licensed securities representative and was not associated with Citigroup Global Markets, Inc.  Pendleton Decl. ¶ 11, Ex. F at 1.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

4

DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND DISMISS ACTION
CASE NO. 3:23-CV-01907-AMO

1  violation of sections 1194, 1197, and 1197.1; 3) provide compliant meal periods to Plaintiff in

2  violation of sections 226.7 and 512; 4) provide compliant rest periods to Plaintiff in violation of

3  sections 226.7 and 512; 5) provide accurate itemized wage statements to Plaintiff in violation of

4  section 226; 6) reimburse Plaintiff for necessary business expenses based on the alleged required

5  use of her personal cell phone in violation of section 2802; and 7) timely pay all final owed wages

6  to Plaintiff in violation of sections 201, 202, and 203.[2]  *Id.*  The demand also alleged a derivative

7  claim under California's Unfair Competition Law.  *Id.*

8          Plaintiff's demand for arbitration identified Citibank's then-counsel of record as

9  Citibank's representative for purposes of arbitration.  *Id.*, Ex. A at 1.  On June 10, 2022, AAA

10  distributed by email a case initiation letter to counsel for both Plaintiff and Citibank.  *Id.* ¶ 3,

11  Ex. B.  The letter stated that Citibank's portion of the filing fee was due and, pursuant to

12  California Code of Civil Procedure ("CCP") sections 1281.97 and 1281.98, "must be received by

13  ***July 8, 2022*** . . . ."  *Id.* (emphasis in original).  Citibank's outside counsel made direct payment of

14  this fee on Citibank's behalf to AAA on June 14, 2022, and arbitration proceeded with the

15  appointment of an arbitrator, Janice P. Brown, on July 18, 2022.  *Id.* ¶¶ 3-4, Ex. C.

16          On September 6, 2022, AAA sent its next invoice for a $750 case management fee to

17  Citibank's counsel, who then forwarded the invoice to Citibank.  *Id.* ¶ 5, Ex. D.  Citibank

18  submitted the invoice internally for processing and payment, which Citibank electronically made

19  to AAA on October 14, 2022.  *Id.* ¶ 5.

20          The timing of Citibank's payment of this invoice had no impact on the arbitration

21  schedule, and no scheduled proceedings at the time were contingent on when AAA received the

22  payment.  *Id.*  On November 21, 2022, the arbitrator scheduled an initial conference call with the

23  parties for December 14, 2022.  *Id.* ¶ 6, Ex. E.  Following that call, the arbitrator issued a

24  scheduling order setting dates for the remainder of the arbitration, including the hearing dates in

25  November 2023.  *Id.* ¶ 7, Ex. F.  Per that order, the next steps in the arbitration would be witness

26

---

27  [2] The arbitration demand must have recycled legal claims and allegations from an unrelated
    action against another employer because it includes an allegation that Citibank did not pay
28  reporting time to Plaintiff, a personal banker working in a retail bank branch, for "coordinating
    the delivery of food and placing food orders."  Levy Decl. ¶ 2, Ex. A at ¶ 9.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

5

DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND DISMISS ACTION
CASE NO. 3:23-CV-01907-AMO

disclosures on March 15, 2023.  *Id.*, Ex. F at 2.  On December 22, 2022, AAA provided by email to Citibank's then-counsel of record an invoice of $13,365 for the arbitrator's compensation deposit.  *Id.* ¶ 8, Ex. G.  After checking on the status of the payment and learning that Citibank had been having difficulty processing the invoice, Citibank's then-counsel wired the amount due directly to AAA on January 26, 2023, to expedite the payment.  *Id.* ¶ 8.

On January 30, 2023, AAA informed Plaintiff's counsel that it had received payment for the December 22 invoice after the section 1281.98 30-day deadline.  *Id.* ¶ 9, Ex. H.  Plaintiff's counsel objected to the late payment, quoting *Espinoza v. Superior Court*, 83 Cal. App. 5th 761 (2022), that "the Legislature intended strict enforcement of the payment deadline" and that any delay in payment "put the employer in material breach of the arbitration agreement . . .  even though its delay in payment was inadvertent, brief, and did not prejudice the employee."  *Id.* ¶ 10, Ex. I.

Plaintiff then requested to withdraw from the arbitration, and AAA issued a case closure letter on February 3, 2023.  *Id.* ¶ 11, Ex. J.  Plaintiff filed her putative class lawsuit in San Mateo County Superior Court that same day.  Notice of Removal (Dkt. No. 1), Ex. A.

### D.     Plaintiff's Lawsuit In This Action

Instead of alleging individual claims for unpaid wages due to off-the-clock work, meal and rest break violations, wage statement violations, expense reimbursements, and waiting time penalties, Plaintiff's lawsuit filed in state court alleged claims on behalf of a putative class of all Citibank non-exempt employees in California.  *Id.*  The complaint also added a new cause of action that had not been in Plaintiff's arbitration demand based on Citibank's alleged failure to correctly pay wages for sick leave.  *Id.* ¶ 17.  The court Complaint substantively differed from the arbitration demand in several other respects:

- Plaintiff's claims for unpaid wages in the lawsuit added the factual allegation that Citibank unlawfully rounded Plaintiff's time entries and those of putative class members;

- Plaintiff added a new theory of alleged widespread off-the-clock violations for unpaid temperature checks and health screenings to avoid spreading COVID-19;

- Plaintiff added a new allegation that Citibank failed to include non-discretionary incentive

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

6

DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND DISMISS ACTION
CASE NO. 3:23-CV-01907-AMO

payments when calculating the regular rate of pay for Plaintiff and putative class members; and

- Plaintiff added a new alleged violation under Labor Code Section 204(d) for the purported failure to pay wages within seven days of the payroll period's closure.[3]

*Compare* Levy Decl., Ex. A *with* Notice of Removal (Dkt. No. 1), Ex. A.

Each of Plaintiff's derivative Labor Code violation allegations that rely on an underlying violation, such as inaccurate wage statements and waiting time penalties for purportedly not paying all wages owed upon termination, are predicated at least in part on the above new theories of allegedly unpaid wages.  (Dkt. No. 1, Ex. A at ¶¶ 46, 49, 98, 106.)

Following Plaintiff's service of the Complaint on Citibank on March 21, 2023, Citibank timely removed the action to this Court on April 20, 2023.  (Dkt. No. 1.)  On May 19, 2023, Plaintiff moved to remand the action to state court.  (Dkt. No. 15.)  On August 28, 2023, this Court denied that motion.  (Dkt. No. 26.)

## III.   LEGAL ARGUMENT

### A.   The FAA Precludes the Court From Invalidating The Policy Under CCP Section 1281.98.

The Federal Arbitration Act ("FAA") sets forth a national and "liberal policy favoring arbitration" and reinforces "the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  The FAA's primary purpose is to "enforce private agreements into which parties [have] entered." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625-26 (1985).  To that end, the FAA requires courts to "rigorously enforce agreements to arbitrate." *Id.* at 626; *Concepcion*, 563 U.S. at 339; *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013).  As the Ninth Circuit further explained, "the FAA's purpose is to give preference (instead of mere equality) to arbitration provisions." *Mortenson v. Bresnan Commc'ns*, 722 F.3d 1151, 1160 (9th Cir. 2013).

---

[3] It is not clear from the Complaint to which cause of action the section 204(d) allegation pertains.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

7

DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND DISMISS ACTION
CASE NO. 3:23-CV-01907-AMO

1.     **The FAA Governs The Policy.**

The FAA governs the Policy's enforcement because the Policy expressly states: "This Policy shall be governed by the Federal Arbitration Act (Title 9 U.S.C.) ('FAA')." *See* Pendleton Decl. ¶ 11, Ex. F at 5. Even without this affirmation, however, the FAA would govern due to the nature of Citibank's business.

In *Allied-Bruce Terminix Companies v. Dobson*, 513 U.S. 265 (1995), the Supreme Court held that in passing the FAA, Congress meant to exercise its power under the Commerce Clause to the fullest limits. The Court found that the term "involving commerce" is synonymous with the term "affecting commerce," and that this term signifies Congress' intent to "exercise [its] commerce power to the full." *Id.* at 273-74, 277. Citibank's business operations indisputably involve and affect interstate commerce given that Citibank is a federally charted national bank regulated by the U.S. Department of the Treasury's Office of the Comptroller of the Currency and operates branches in multiple states. *See United States v. Culbert*, 548 F.2d 1355, 1359 (9th Cir. 1977), rev'd on other grounds, 435 U.S. 371 (1978) ("It is obvious that the banking industry vitally affects interstate commerce."). As Citibank's business operations affect commerce in different states, the FAA governs the Policy.

2.     **The FAA Preempts CCP Section 1281.98 Because Section 1281.98 Creates Special Rules Disfavoring Arbitration Agreements.**

The FAA preempts section 1281.98's application to the Policy. Section 2 of the FAA states that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of *any* contract." 9 U.S.C. § 2 (emphasis added). The United States Supreme Court repeatedly has construed Section 2 to be "a congressional declaration" requiring courts to enforce valid arbitration agreements "notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). As such, the FAA "preempts any state rule discriminating on its face against arbitration," including "any rule that covertly accomplishes the same objective by disfavoring contracts that (oh so coincidentally) have the defining features of arbitration agreements." *Kindred Nursing Centers L.P. v. Clark*, 581 U.S.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

8

DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND DISMISS ACTION
CASE NO. 3:23-CV-01907-AMO

246, 251 (2017).  FAA preemption thus occurs when an arbitration-specific rule "invalidates, revokes, or makes unenforceable an arbitration agreement upon grounds that do not exist 'at law or in equity' for the 'revocation of any contract.'"  *Belyea v. Greensky, Inc.*, 2022 WL 14965532, at *7 (N.D. Cal. Oct. 26, 2022) (citing 9 U.S.C. § 2).

This year, the Ninth Circuit followed the Supreme Court's precedents on FAA preemption to invalidate a state law that, like section 1281.98, "singled out executed arbitration agreements and prevented the enforcement of such agreements according to their terms."  *See Chamber of Commerce of the United States of America v. Bonta*, 62 F.4th 473, 483 (9th Cir. 2023) (collecting cases).  In *Bonta*, the Ninth Circuit held that a California state law (AB 51) disfavored arbitration agreements by attaching civil and criminal sanctions to any mandatory employment contract waiving the right to pursue employment-related claims in particular forums.  *Id.* at 486.  Because this prohibition targeted a feature of every arbitration agreement (the waiver of a court forum for adjudicating legal claims) and because California law does not otherwise prohibit other mandatory terms in employment contracts, the Ninth Circuit held that FAA preemption barred the state law's enforcement.  *Id.*

Like AB 51, sections 1281.97 and 1281.98 single-out arbitration agreements and interfere with the liberal federal policy favoring arbitration.[4]  These provisions define any harmless, unintentional, short delay in payment of an arbitration fee by the employer as a "material breach" of the contract that excuses the other party from honoring the contract and from continuing to arbitrate the dispute previously submitted to arbitration.  *See, e.g.*, *Espinoza v. Super. Ct.*, 83 Cal. App. 5th 761, 783 (2022) (holding that "under section 1281.97, subdivision (a)(1), defendant was in material breach of the arbitration agreement even though, as the trial court found, the delay in payment was inadvertent, brief, and did not prejudice plaintiff").

California contract law, however, does not allow a party to shed his or her contractual obligations on the sole basis that the other party unintentionally and harmlessly made a payment

---

[4] Section 1281.97 is the companion statute to section 1281.98 and addresses payment of arbitration fees to *initiate* an arbitration.  Section 1281.98 addresses payment of arbitration fees to *continue to proceed in an ongoing arbitration.*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

9

DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND DISMISS ACTION
CASE NO. 3:23-CV-01907-AMO

1   (or even multiple payments) shortly after a set due date for payment.  *See, e.g.*, *Urica, Inc. v.*

2   *Pharmaplast S.A.E.*, 2013 WL 12123230, at *8 (C.D. Cal. May 6, 2013) ("Given the . . . fact that

3   Pharmaplast consistently accepted late payments and the seemingly minor harm the delayed

4   payments caused, the court cannot conclude that they were material breaches [of contract] as a

5   matter of law.").  Indeed, no other contracts have a similar mechanism in law for one party to

6   disobey a contract in midstream despite the other party substantially performing its obligations

7   under the contract.  *See Reliance Fin. Corp. v. Miller*, 557 F.2d 674, 683 (9th Cir. 1977) ("The

8   courts in California as elsewhere have recognized that if a party substantially performs his

9   obligations under a contract, he will not be found in total breach and the other party's

10  performance will not be excused."); *see also Viacom Int'l Inc. v. MGA Ent., Inc.*, 2016 WL

11  7448142, at *1 (C.D. Cal. Aug. 11, 2016), aff'd, 727 F. App'x 441 (9th Cir. 2018), opinion

12  amended and superseded on denial of reh'g, 730 F. App'x 470 (9th Cir. 2018), and aff'd, 730 F.

13  App'x 470 (9th Cir. 2018) ("Whether a partial breach of a contract is material depends on the

14  importance or seriousness thereof and the extent to which the injured party will obtain the

15  substantial benefit which he could have reasonably anticipated.  . . . . *[A] breach that does not*

16  *cause any harm is—as a matter of law—not a material breach*.") (emphasis added).

17         In fact, prior to section 1281.98's enactment, courts refused to find that a short delay in

18  paying arbitration fees could suffice to constitute a material breach of the agreement under the

19  existing legal definition of a "material breach."  Rather, such a finding "would be tantamount to a

20  'defense that is only applicable to arbitration agreements,' which the FAA does not permit."  *Id.*

21  (quoting *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010 (9th Cir. 2005)).

22         The United States Supreme Court reaffirmed the FAA's preclusive effect in *Viking River*

23  *Cruises, Inc. v. Moriana*, 142 S.Ct. 1906 (2022), and at least one court has since recognized

24  sections 1281.97 and 1281.98 as an improper attempt by the legislature to disfavor arbitration

25  agreements through arbitration-specific barriers to enforcement.  *See Belyea*, 2022 WL 14965532,

26  at *7 (quoting *Viking River Cruises*, 142 S.Ct. at 1917); *see also Kindred Nursing Centers*, 581

27  U.S. at 252 (holding that the FAA preempts rules "too tailor-made to arbitration agreements—

28  subjecting them, by virtue of their defining trait [of involving arbitration], to uncommon

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

10

DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND DISMISS ACTION
CASE NO. 3:23-CV-01907-AMO

1    barriers"). In *Belyea*, the district court found that section 1281.97 violated Section 2 of the FAA

2    by rendering "arbitration provisions unenforceable on arbitration-specific grounds." *Belyea*, 2022

3    WL 14965532, at *7. Specifically, the court found that sections 1281.97 and 1281.98's "strict

4    30-day payment window" created a "substantive modification of California contract law" by

5    expressly redefining the general contract terms of "waiver" and "breach," but only as to

6    arbitration agreements. *Id.* The court compared section 1281.97's effect to those of other

7    contracts in which a late payment by one party does not automatically invalidate the contract

8    absent a "time is of the essence" clause. *Id.*

9         The *Belyea* court correctly decided the FAA preemption issue because, as the Ninth

10   Circuit held in *Bonta*, a law that has the effect of depriving a party of the "contractually binding

11   right to arbitrate disputes" absent strict compliance with that law "is exactly what [section 2 of the

12   FAA] prohibits *unless all contracts would be unenforceable under the same circumstances.*" *Id.*

13   (emphasis added).

14        Here, Citibank had already paid any outstanding fees by the time Plaintiff was even aware

15   of when Citibank had paid, and no disruption or delay to the arbitration proceedings had occurred.

16   Plaintiff only knows about the payment date because AAA believed it had the statutory obligation

17   to disclose that information to her. Further, when Citibank had paid the earlier September 2022

18   invoice more than 30 days after the date that AAA had sent that invoice to Citibank's outside

19   counsel, neither Plaintiff nor AAA made any objection because, as in January 2023, the

20   payment's timing did not delay in any way the arbitration from proceeding as scheduled. Thus,

21   as in *Urica*, no material breach had occurred under California contract law because both Plaintiff

22   and AAA accepted Citibank's payment in September 2022 a few days after the 30-day window

23   following the August invoice date.

24        The only reason Plaintiff can muster for withdrawing from the ongoing arbitration

25   proceedings is that the legislature gifted her with an escape hatch to refile arbitrable claims in

26   court. In enacting sections 1281.97 and 1281.98, the legislature attempted to circumvent the

27   FAA's protection of arbitration agreements by shoving the inconsequential difference between a

28   payment made 30 days after an invoice date and a payment made 31 days after that date into the

definition of a "material breach," ***but only for arbitration agreements***.  In barring an employer from arguing that it has substantially performed under the contract any time it pays an invoice more than 30 days after the invoice date, sections 1281.97 and 1281.98 make it uniquely easy for an employee to avoid performing under an arbitration agreement.  Had this been any other contract between Plaintiff and Citibank, Plaintiff indisputably would have remained bound to that contract under these exact same facts.  Thus, just as in *Bonta*, the FAA preempts section 1281.98 because it disfavors arbitration agreements over other contracts, and Plaintiff therefore may not rely on that statute to circumvent her FAA-governed arbitration agreement.

   **3.**  **Section 1281.98 Is Inapplicable Because The Parties Already Agreed To A Procedure That Secures Payment Of Arbitration Fees Without Delaying Arbitration.**

  Even if the FAA did not preempt section 1281.98, which it does, section 1281.98 still would not apply to the fees at issue here.  The parties in entering the Policy adopted the AAA's Employment Arbitration Rules and Mediation Procedures to govern arbitration proceedings. Pendleton Decl. ¶ 11, Ex. F at 1, 3.  Rule 47 sets forth the procedure for suspending proceedings for the nonpayment of any fees:

> If arbitrator compensation or administrative charges have not been paid in full, the AAA may so inform the parties in order that one of them may advance the required payment. If such payments are not made, the arbitrator *may* order the suspension or termination of the proceedings.

Declaration of Nancy Nguyen ("Nguyen Decl.") ¶ 2, Ex. A at 26 (Rule 47) (emphasis added).

  Consequently, once the 30-day period described in section 1281.98(a)(1) lapses, Rule 47 establishes four steps that must occur before arbitration proceedings may be suspended or terminated:  1) AAA issues notice to the parties of an unpaid fee; 2) any party may then advance the unpaid fee; 3) the fees are not advanced following the AAA's notice; and 4) the arbitrator issues a suspension or termination order.  By incorporating the AAA rules into the Policy, the parties agreed to this procedure.  *See, e.g.*, *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (holding that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate" in accordance with those rules).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

12

DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND DISMISS ACTION
CASE NO. 3:23-CV-01907-AMO

Rule 47 renders section 1281.98 inapplicable here for three reasons.  First, Rule 47 extends any deadline for payment established by section 1281.98(a)(1), which section 1281.98(a)(2) expressly allows the parties to do.  *See* Code Civ. Proc. § 1281.98(a)(2) ("Any extension of time for the due date shall be agreed upon by all parties.").  Second, section 1281.98 applies to fees that are "required" to continue the arbitration proceeding, and Rule 47 states that arbitration continues despite unpaid fees unless and until the arbitrator orders otherwise if no party advances payment after the due date.  And, third, the earliest point at which fees become "required" to continue the arbitration under Rule 47 occurs after AAA issues notice of a non-payment to the parties.  Only then may an arbitrator terminate or suspend the proceedings due to non-payment and, as such, the 30-day period in section 1281.98(a)(1) does not start until the AAA issues notice of non-payment.

### a.    The Parties Agreed To Extend The Due Date For Payment.

Section 1281.98(a)(2) allows the parties to agree as part of the arbitration agreement on a deadline for when payment of fees will be due and, in any event, allows the parties to agree to an "extension of time for the due date . . . ."  The parties did that here by incorporating Rule 47 into the Policy.  This rule entitles all parties to notice from the AAA of an unpaid fee *and* an opportunity to tender payment after it originally was due.  *Id.*  Thus, the parties' agreement provides for at least one extension to any payment due date before the arbitrator—not AAA—has the authority to order suspension due to non-payment.  Section 1281.98(a)(2) allows for such an extension, and all fees were paid within the allowed extension period because the subsequent notice from AAA pursuant to Rule 47 acknowledged that Citibank already had tendered payment.

### b.    The Fees At Issue Were Not Required To Continue The Arbitration Proceeding At The Time Citibank Paid Them.

Section 1281.98 applies only:  "if the fees or costs *required to continue the arbitration proceeding* are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel the employee or consumer to proceed with that arbitration as a result of the material breach."  Code Civ. Proc. § 1281.98(a)(1) (emphasis added).  Thus, the result of any failure to pay a covered fee

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

13

DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND DISMISS ACTION
CASE NO. 3:23-CV-01907-AMO

on the due date must be a *discontinuation*, or delay, of the arbitration proceeding.

The "unpaid fee" that Plaintiff used as an excuse to withdraw from arbitration was not "required to continue the arbitration proceeding" because Rule 47 specifically mandates that arbitration continue even if that fee is not paid by the original due date.  If no party advances the payment after notice from the AAA of non-payment, then (and only then) may an arbitrator decide if arbitration proceedings should suspend or terminate due to nonpayment.  Here, no such order was ever issued by or even requested from the arbitrator because any outstanding fee had already been paid within two days of receiving notice from AAA of the unpaid fee.

Rule 47's procedure promotes the same legislative aims as section 1281.98.  During section 1281.98's enactment, the legislature declared that it intended for the law to address the "procedural limbo and delay" that can result if an employer purposefully "stalls or obstructs the arbitration proceeding by refusing to pay the required fees." *See* Assem. Floor Analysis, 3d reading analysis of Sen. Bill No. 808 (2019-2020 Reg. Sess.) as amended May 20, 2019, p. 2. Rule 47 prevents procedural limbo and delay an unpaid fee can cause by requiring arbitration to continue, offering a second opportunity to pay, and then allowing the arbitrator to decide if a still-unpaid fee delayed the arbitration.  Because the Rule 47 process governs here, section 1281.98 was not triggered.

                c.       AAA Must Have An Opportunity To Administer Rule 47 Before A "Material Breach" Due To Nonpayment Of Fees Can Occur.

As discussed above, an unpaid fee may only disrupt arbitration proceedings under the AAA rules (and only then at the arbitrator's discretion) after AAA has notified the parties of the unpaid fee "in order that one of them may advance the required payment."  Nguyen Decl., Ex. A at 26 (Rule 47).  The failure to advance payment after receipt of *that* notice triggers the arbitrator's authority under Rule 47 to issue an order either suspending or terminating proceedings.  *Id.*  No application of section 1281.98's 30-day time limit for payment before a "material breach" occurs can interfere with AAA's administration of Rule 47 governing how and when parties are permitted to pay fees.  *See Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (holding that the FAA's requirement that courts "'rigorously enforce' arbitration

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

14

DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND DISMISS ACTION
CASE NO. 3:23-CV-01907-AMO

agreements according to their terms," includes enforcing terms that specify "the rules under which that arbitration will be conducted").

Thus, the earliest the 30-day period under section 1281.98 could start to run is after AAA issues notice of an unpaid fee and provides the opportunity for either party to advance payment. Citibank, however, already had satisfied all outstanding payments by the time AAA issued notice to all parties (including Plaintiff) that it had not received payment of a fee. Specifically, on January 30, 2023, AAA sent the following message to the parties: "Payment of the attached invoice *was received* by wire on January 27, 2023. As this matter is subject to the California Code of Civil Procedure, *we have an obligation to inform Claimant's counsel of the delayed payment*." Levy Decl. ¶ 9, Ex. H (emphasis added). This was the first notice the parties received regarding the status of payment since issuance of that invoice. Because Citibank had paid that invoice, there was no need to trigger the 30-day period under section 1281.98(a)(1).

### 4.     AAA Had Not Yet Triggered The 30-Day Period For Payment Under Section 1281.98 When It Received Fee Payments From Citibank.

Even if section 1281.98 operates independently from AAA Rule 47, AAA had not triggered the 30-day time period for payment of fees at the time Citibank paid them. Section 1281.98 explains in detail the events that must occur before the 30-day time period for payment begins to run. Specifically, section 1281.98(a)(2) states:

> The arbitration provider shall provide an invoice for any fees and costs required for the arbitration proceeding to continue to all of *the parties* to the arbitration. The invoice shall be provided in its entirety, shall state the full amount owed and the date that payment is due, and shall be sent to *all parties* by the same means on the same day.

Code Civ. Proc. § 1281.98(a)(2) (emphasis added).

In instructing the arbitration provider to send an invoice to "the parties" at the same time and by the same means, the legislature did not create any leeway for the arbitration provider to send the invoice to a non-party, such as outside counsel, to satisfy the statute and begin the 30-day period for payment.

The California Supreme Court has held that when "the subject of the statute may affect the substantial rights of the litigants themselves"—as section 1281.98 affects Citibank's substantial

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

15

DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND DISMISS ACTION
CASE NO. 3:23-CV-01907-AMO

right protected under the FAA to arbitrate disputes and to have arbitration agreements enforced according to their terms—"the term 'party' literally means the party litigant, not the litigant's attorney." *Levy v. Super. Ct.*, 10 Cal. 4th 578, 583 (1995).  Indeed, when the legislature intends for an attorney to stand in the shoes of a party to effectuate a statute's purpose, the legislature expressly says so.  *See, e.g.*, Code Civ. Proc. § 664.6(b) ("For purposes of this section, a writing is signed by a party if it is signed by any of the following: (1) The party [or] (2) An attorney who represents the party."); *id.* § 1985.6(b)(1) (requiring a subpoenaing party to provide notice of a subpoena for employment records to "the employee personally, . . . or, if he or she is a party, to his or her attorney of record."); *id.* § 425.11(d)(2) (providing these instructions for plaintiff to serve responsive statement of damages in a personal injury or wrongful death action to a requesting party: "[i]f a party has appeared in the action, the statement shall be served upon the party's attorney, or upon the party if the party has appeared without an attorney . . . ."); *id.* § 998(b) ("Any acceptance of the offer . . . shall be in writing and shall be signed by counsel for the accepting party or, if not represented by counsel, by the accepting party.").  Section 1281.98(a)(2) contains no language authorizing the arbitration provider to send an invoice to a party's counsel instead of the party to establish a deadline for payment under the statute and, as Plaintiff likely will contend, section 1281.98 should be construed strictly.

Moreover, given that section 1281.98 addresses invoices generated "during the pendency of an arbitration proceeding," the legislature would have been aware that parties were likely to have retained legal representation by the time the arbitration provider distributed an invoice covered by the section.  Yet, the legislature in adopting section 1281.98 affirmatively chose to limit to whom the arbitration provider could send covered invoices, specifying only the *actual parties* as permitted recipients.  That choice is consistent with the stated intent to avoid delays because sending the invoice to counsel to then send to their client only creates unnecessary steps before payment can be made.

Here, it is undisputed that AAA sent the December 2022 invoice at issue to both parties' legal counsel only, and never to the actual parties.  Levy Decl. ¶ 8, Ex. G.  Furthermore, AAA put Citibank's outside counsel at the time, who were not a *party* to the action, on the actual invoice.

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Costa Mesa

16

DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND DISMISS ACTION
CASE NO. 3:23-CV-01907-AMO

1    Consequently, AAA did not follow the procedure for setting a formal date for payment under

2    section 1281.98, and Citibank could not have been in breach of the Policy when that invoice was

3    paid.  AAA needed to distribute any invoices exactly as section 1281.98 requires before any

4    deadline for payment under the statute applied.  However, it did not comply with section

5    1281.98's requirement for distributing an invoice to the parties and therefore Citibank timely paid

6    the fees in January 2023.

7         **5.    Plaintiff Must Arbitrate Her New Theories And Claims Even Absent**
                    **Preemption.**
8

9         Even if the FAA did not preempt section 1281.98, which it does, the only claims that

10   would become non-arbitrable are those Plaintiff asserted in the original arbitration proceeding.

11   Section 1281.98 states that when the drafting party fails to timely pay fees during the pendency of

12   an arbitration proceeding, the drafting party is in breach of the agreement and default of the

13   arbitration, and "waives its right to compel the employee or consumer to proceed with *that*

14   *arbitration* as a result of the material breach."  Code Civ. Proc. § 1281.98(a)(1) (emphasis added).

15   Thus, section 1281.98 can only allow Plaintiff to litigate in court the exact same disputes that she

16   had previously attempted to arbitrate.  Conversely, disputes that were not part of "that arbitration"

17   remain subject to arbitration under the Policy.

18        Specifically, Plaintiff's Complaint asserts entirely new causes of action and espouses new

19   theories that she did not include in her arbitration pleadings and were not part of the dispute

20   pending in arbitration at the time of the alleged breach.  These include her new cause of action for

21   sick pay and new theories supporting her claims for unpaid wages and off-the-clock work.  At the

22   time of the supposed "material breach," Plaintiff had not yet submitted these claims and theories

23   to arbitration and Citibank could not in that proceeding have waived the right to arbitrate any

24   unpled claims.  Indeed, the United States Supreme Court has held that even a material breach of

25   an agreement does not equate to a repudiation of the entire agreement.  *See Bakeries v. Bakery*

26   *Workers*, 370 U.S. 254, 262 (1962) ("Arbitration provisions, which themselves have not been

27   repudiated, are meant to survive breaches of contract, in many contexts, even total breach.").

28        Similarly, the claims that Plaintiff pursues here on behalf of a putative class were not part

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

17

DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND DISMISS ACTION
CASE NO. 3:23-CV-01907-AMO

1    of the original arbitration demand and violate the Policy's class action waiver, which has not been

2    repudiated or rescinded.  Because the Policy still covers all employment-related disputes between

3    Plaintiff and Citibank, and still requires Plaintiff to adjudicate her claims against Citibank on an

4    individual basis only, the only claims that Plaintiff could hope to adjudicate in court under section

5    1281.98 are the same individual claims she had already raised in the preceding arbitration.

6    Plaintiff therefore must submit any new claims or theories to arbitration regardless of whether

7    section 1281.98 applies here, and she remains bound by the class action waiver in the Policy.

8          **B.**     **The Policy Is Binding And Enforceable.**

9         In previously filing an arbitration demand in accordance with the Policy's terms, Plaintiff

10   already admitted to the existence of a valid agreement to arbitrate with Citibank.  As a result, the

11   Court should deny any challenge to the Policy's general enforceability and enforce the Policy's

12   class action waiver.  If Plaintiff belatedly disputes the Policy's enforceability, then this Court's

13   role is limited to answering two questions:  (1) does a valid agreement to arbitrate exist; and, if it

14   does, (2) does the arbitration agreement encompass the dispute or claims at issue?  *Chiron Corp.*

15   *v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  If the answer to both of these

16   questions is "yes," then the Court must compel arbitration.  *Id*.  In answering these questions,

17   Supreme Court and Ninth Circuit precedent require the Court to apply a presumption of

18   arbitrability such that "any doubts concerning the scope of arbitrable issues should be resolved in

19   favor of arbitration."  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25; *Comedy Club, Inc. v.*

20   *Improv W. Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009) (holding that an arbitration agreement is

21   presumed enforceable *unless* it may be said with "positive assurance" that the arbitration clause is

22   "not susceptible of an interpretation" that covers the asserted dispute).

23        Here, the Court should answer both of these questions affirmatively, and therefore should

24   grant Citibank's motion to compel.

25          **1.**     **Plaintiff Entered Into A Valid Arbitration Agreement.**

26        It is undeniable that Plaintiff agreed to arbitrate her disputes in this action.  She signed

27   numerous acknowledgments confirming that she had read and reviewed each version of the

28   Policy presented to her and agreed to be bound by it.  Moreover, she acknowledged her

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

18

DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND DISMISS ACTION
CASE NO. 3:23-CV-01907-AMO

1   agreement to the Policy when she submitted her claims to arbitration before AAA as the Policy

2   requires.

### 2. The Policy Covers Plaintiff's Claims.

4   The Policy's definition of covered claims is broad and covers every claim that Plaintiff

5   brings here. The Policy states that it requires arbitration of any "federal, state, or local statute,

6   regulation or common-law doctrine regarding employment, . . . the terms and conditions of

7   employment, termination of employment, [or] compensation . . . ." Pendleton Decl. ¶ 11, Ex. F at

8   1-2. Plaintiff's wage and hour claims under the Labor Code and her derivative Unfair

9   Competition claim fall squarely within several categories of covered claims.

### 3. The Policy Is Not Unconscionable.

11   If an arbitration agreement satisfies the minimum requirements for validity, it must be

12   enforced unless the party opposing enforcement can prove that the agreement is both procedurally

13   and substantively unconscionable. *See Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1243

14   (2016); *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000).

15   Plaintiff, as the party opposing arbitration, bears the burden of proving unconscionability. *See*

16   *Ortiz v. Hobby Lobby Stores, Inc.*, 52 F. Supp. 3d 1070, 1077 (E.D. Cal. 2014) ("The party

17   challenging the arbitration agreement bears the burden of establishing unconscionability.");

18   *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (2015) ("Because unconscionability

19   is a contract defense, the party asserting the defense bears the burden of proof.") (citation

20   omitted); *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 972 (1977).

21   Procedural unconscionability focuses on oppression or unfair surprise and substantive

22   unconscionability focuses on overly harsh or one-sided terms. *Sanchez*, 61 Cal. 4th at 910

23   (internal citation omitted); *Sonic Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1133 (2013)

24   (*Sonic II*) (internal citation omitted) (same). Additionally, there is a sliding scale relative to both

25   components:

26   The prevailing view is that [procedural and substantive unconscionability] must
    *both* be present in order for a court to exercise its discretion to refuse to enforce a

27   contract or clause under the doctrine of unconscionability . . . . But they need not
    be present in the same degree . . . . [T]he more substantively oppressive the contract

28   term, the less evidence of procedural unconscionability is required to come to the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

19

DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND DISMISS ACTION
CASE NO. 3:23-CV-01907-AMO

1    conclusion that the term is unenforceable, and vice versa.

2    *Baltazar*, 62 Cal. 4th at 1243-44 (citing *Armendariz*, 24 Cal. 4th at 114) (internal quotations

3    omitted); *Sanchez*, 61 Cal. 4th at 910 (same).

4        Plaintiff cannot meet her burden of proving both procedural and substantive

5    unconscionability.

6                    a.    <u>The Policy Is Not Procedurally Unconscionable.</u>

7        Procedural unconscionability "focuses on the elements of oppression and surprise."

8    *Serafin v. Balco Props. Ltd., LLC*, 235 Cal. App. 4th 165, at 177 (2015).  The "oppression"

9    element "arises from an inequality of bargaining power . . . ."  *Id.*  The "surprise" element

10   "involves the extent to which the terms of the bargain are hidden in a 'prolix printed form' drafted

11   by a party in a superior bargaining position."  *Id.* (citation omitted).

12       The procedural element to unconscionability may arise in connection with adhesion

13   contracts, but the finding of an adhesion contract does not alone render the arbitration agreement

14   unenforceable.  *See Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th

15   1332, 1348 & n.9 (2015) ("We recognize that showing a contract is one of adhesion does not

16   always establish procedural unconscionability."); *Lane v. Francis Capital Mgmt. LLC*, 224 Cal.

17   App. 4th 676, 689 (2014) ("[A]n adhesion contract remains fully enforceable unless . . . the

18   provision falls outside the reasonable expectations of the weaker party or it is unconscionable.")

19   (internal quotes omitted).  Further, the Supreme Court has recognized that "there often will be

20   unequal bargaining power between employers and employees."  *Gilmer v. Interstate/Johnson

21   Lane Corp.*, 500 U.S. 20, 33 (1991).  However, "mere inequality in bargaining power" does not

22   render an employee's arbitration agreement unenforceable.  *Id.*  An agreement also is

23   procedurally unconscionable where there is "oppression arising from an inequality of bargaining

24   power or surprise arising from buried terms in a complex printed form."  *McManus v. CIBC

25   World Mkts. Corp.*, 109 Cal. App. 4th 76, 87 (2003).

26       Here, nothing was "oppressive" or "surprising" about the Policy.  Citibank first presented

27   the Policy to Plaintiff in the employment application that she completed.  Citibank again notified

28   Plaintiff of the Policy in her employment offer letter, which included the stand-alone Policy.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

20

DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND DISMISS ACTION
CASE NO. 3:23-CV-01907-AMO

Plaintiff had an opportunity to review and read the Policy, and she electronically signed it. Citibank also notified Plaintiff of the Policy through its employee handbooks and the Principles of Employment, which she also electronically signed.  For these reasons, the Policy is not procedurally unconscionable.

b.      The Policy Is Not Substantively Unconscionable.

Citibank's Policy also is not substantively unconscionable.  Substantive unconscionability centers "on the terms of the agreement and whether those terms are so one-sided as to *shock the conscience*."  *See Soltani v. W. & S. Life Ins. Co.*, 258 F.3d 1038, 1043 (9th Cir. 2001) (quoting *Kinney v. United Healthcare Servs.*, 70 Cal. App. 4th 1322, 1330 (1999)) (emphasis in original); *see also Sonic II*, 57 Cal. 4th at 1145; *Sanchez*, 61 Cal. 4th at 910-11; *Baltazar*, 62 Cal. 4th at 1244.  Plaintiff cannot meet her burden to prove substantive unconscionability.  *See Baltazar*, 62 Cal. 4th at 1243-44; *Armendariz*, 24 Cal. 4th at 114.

"The unconscionability doctrine ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as overly harsh . . . unduly oppressive . . . so one-sided as to shock the conscience . . . or unfairly one-sided."  *Sonic II*, 57 Cal. 4th at 1145 (internal citations omitted); *Sanchez*, 61 Cal. 4th at 910-11 (same); *Baltazar*, 62 Cal. 4th at 1244 (same); *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1322-23 (2005) ("The terms must shock the conscience.") (internal quotation and citation omitted).  There are no terms in the Policy that "shock the conscience."

In *Armendariz*, the California Supreme Court held that a mandatory pre-dispute agreement requiring arbitration of unwaivable statutory rights must provide for (a) a neutral arbitrator; (b) adequate discovery; (c) any remedy to a claim that otherwise would be available in court (*e.g.*, monetary damages, injunction, reinstatement, etc.); (d) a written arbitration award that permits limited judicial review; and (e) employer must pay arbitrator's fees and all costs unique to arbitration.  *Armendariz*, 24 Cal. 4th at 102.  The Court further held that there must be a "modicum of bilaterality" between the employer and the employee as to the claims that each would be obligated to arbitrate pursuant to the arbitration agreement.  *Id*. at 116-17; *see also Sonic II*, 57 Cal. 4th at 1133-34 (stating that one form of substantive unconscionability is the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

21

DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND DISMISS ACTION
CASE NO. 3:23-CV-01907-AMO

1     arbitration agreement's "lack of a 'modicum of bilaterality,' wherein the employee's claims

2     against the employer, but not the employer's claims against the employee are subject to

3     arbitration") (citing *Armendariz*, 24 Cal. 4th at 119).

4           The Policy satisfies each of the *Armendariz* standards:

5         • **Neutral Arbitrator:** The Policy provides for "a neutral arbitrator" who is to be

6     appointed as provided in the AAA or FINRA arbitration rules, as applicable. *See* Pendleton Decl.

7     ¶ 11, Ex. F at 3.

8         • **Adequate Discovery:** The Policy provides for discovery "pursuant to the rules of the

9     AAA or FINRA, as applicable." *See id.* at 4. The AAA Rules provide for written discovery,

10    document production and depositions.[5] Nguyen Decl., Ex. A at 14 (Rule 9). In addition, the

11    AAA Rules and the Policy allow the arbitrator discretion and authority to order further discovery

12    upon a party's request. *Id.*; Pendleton Decl. ¶ 11, Ex. F at 4.

13        • **Written Decision:** The arbitrator's award under the Policy "shall be in writing and

14    shall be signed," thereby ensuring a written decision. Pendleton Decl. ¶ 11, Ex. F at 5. This

15    procedure is more than sufficient to "reveal, however briefly, the essential findings and

16    conclusions on which the award is based." *Armendariz,* 24 Cal. 4th at 107.

17        • **Scope of Relief:** The Policy states that the arbitrator "shall be governed by applicable

18    federal, state and/or local law" and "shall have the authority to award compensatory damages and

19    injunctive relief to the extent permitted by applicable law." Pendleton Decl. ¶ 11, Ex. F at 5. The

20    Policy further authorizes the arbitrator to award "punitive or exemplary damages or attorneys'

21    fees where expressly provided by applicable law." *Id.* Thus, the Policy does not preclude the

22    arbitrator from awarding a remedy that the law otherwise allows, and therefore, satisfies this

23    element.

24        • **Plaintiff Not Required to Pay Arbitration Fees:** Under the Policy, Citibank shall

25    pay any filing fee AAA or FINRA (here, AAA) requires, as applicable, and must also pay hearing

26    fees and arbitrator fees for the hearings. *Id.* These terms unquestionably are valid under

27

28

---

[5] The AAA Rules are publicly available on AAA's website at
https://www.adr.org/sites/default/files/EmploymentRules-Web.pdf.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

22

DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND DISMISS ACTION
CASE NO. 3:23-CV-01907-AMO

1    *Armendariz.*

2    • **The Policy is Mutual:**  The Policy is mutual between Plaintiff and Citibank because it

3    "applies to both [Plaintiff] and Citi" and requires the parties to pursue all employment-related

4    claims against the other through binding arbitration.  *See id.* at section titled "Scope of Policy."

5    The Policy equally binds Citibank.  The Policy therefore satisfies this final *Armendariz*

6    requirement.  *See Dumais v. Am. Gold Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002); *24 Hour*

7    *Fitness, Inc. v. Super. Ct.*, 66 Cal. App. 4th 1199, 1213 (1998) (no substantive unconscionability

8    where the arbitration provision applied equally to employer and employee).

9          Thus, Plaintiff cannot legitimately contend that the Policy is unconscionable.

10         **C.     The Court Should Dismiss This Action.**

11         The Ninth Circuit has held that under 9 U.S.C. Section 3 the courts have discretion to

12    dismiss the entire action when "all of the claims raised in the action are subject to arbitration."

13    *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014).  Alternatively,

14    Section 3 provides:

15         If any suit or proceeding be brought in any of the courts of the United States upon
           any issue referable to arbitration under an agreement in writing for such arbitration,
16         the court in which such suit is pending, upon being satisfied that the issue involved
           in such suit or proceeding is referable to arbitration under such an agreement, shall
17         on application of one of the parties stay the trial of the action until such arbitration
           has been had in accordance with the terms of the agreement, providing the applicant
18         for the stay is not in default in proceeding with such arbitration.

19    9 U.S.C. § 3.

20         Because the Policy covers Plaintiff's claims, the Court should dismiss the action and

21    compel Plaintiff to bring her claims in arbitration on an individual basis.  In the alternative, the

22    Court should stay the instant action pending completion of the arbitration.

23    **IV.    CONCLUSION**

24         For the reasons set forth above, Citibank respectfully requests an order: (1) granting this

25    Motion and compelling arbitration of Plaintiff's individual claims; (2) striking or dismissing

26    Plaintiff's putative class action allegations; and (3) dismissing the judicial proceedings from this

27    Court, or in the alternative, staying the action and retaining jurisdiction for purposes of enforcing

28    the arbitration award.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND DISMISS ACTION
CASE NO. 3:23-CV-01907-AMO

1    Dated:  September 29, 2023                    MORGAN, LEWIS & BOCKIUS LLP

2                                                  By   */s/ Daryl S. Landy*
                                                   Daryl S. Landy
3                                                  Attorneys for Defendant
                                                   CITIBANK, N.A.
4

5

6    DB2/ 45824418.23

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND DISMISS ACTION
CASE NO. 3:23-CV-01907-AMO